IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 NOV 29 P 3: 31

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

| | | |
|---|---|---|
| LINDA M. BROWN-HIGH, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-17-276 |
| L'OREAL USA, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This suit arises from injuries that Plaintiff Linda M. Brown-High allegedly suffered from using a product manufactured by Defendants L'Oreal USA, Inc., Soft Sheen – Carson, LLC, and Soft Sheen Products, Inc. (the "Manufacturer Defendants"): an Optimum Salon Haircare Amla-Legend-No-Mix-No-Lye-Relaxer ("Amla Relaxer"). ECF No. 23 ¶ 6. Plaintiff purchased the Amla Relaxer from a Family Dollar Store in Mount Rainier, Maryland, and has also named as Defendants Family Dollar Stores, Inc., Family Dollar Stores of Maryland, Inc., and Dollar Tree, Inc. (the "Retail Defendants"). For her injuries, Plaintiff seeks $1 million in compensatory damages and $1 million in punitive damages against the Manufacturer Defendants, and $1 million in compensatory damages against the Retail Defendants. Presently pending before the Court is the Manufacturer Defendants' Motion to Dismiss, ECF No. 30, which has been joined by the Retail Defendants, ECF No. 35. The Court held a motions hearing on November 8, 2017. ECF No. 51. For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

In 2013, the Manufacturer Defendants released a line of hair products called the "Amla Legend," which they claimed were "enriched with purified Amla extract," ECF No. 23 ¶ 15, "a powerful antioxidant rich in vitamins," *id.* ¶ 16. The Amla Relaxer was included in this new line of products. A relaxer is a chemical hair product used by individuals with curly hair to chemically "relax" or straighten their hair. *Id.* ¶ 61. The Amla Relaxer was packaged as a five-step product, and each box of Amla Relaxer included a Scalp Protector Pre-Treatment, a relaxing cream, a shampoo, a conditioner, and an oil moisturizer. *Id.* ¶ 18. The Manufacturer Defendants marketed and sold the Amla Legend products directly to consumers through its own website, and also through major retail locations, including the Retail Defendants. *Id.* ¶ 17. On the Amla Relaxer's packaging, the Manufacturer Defendants made a number of representations, including that the product contained "NO-LYE," "Protects Scalp & Skin," and "Ensures a No-Mistake Application." *Id.* ¶ 19. The packaging also contained a number of warnings on the side of the box, including, but not limited to, instructing consumers that the product contained "alkali," that consumers should wear gloves while using the product, that the product could cause blindness, and that the consumer should keep the product off of skin areas. *Id.* ¶ 34.

Typically, lye-based relaxers contain sodium hydroxide,[2] carry a high risk of a chemical burn, and are generally applied by beauty professionals. *Id.* ¶ 23. "No-lye" relaxers do not contain sodium hydroxide, and are marketed to consumers as less dangerous products that can be applied without the assistance of a beauty professional. *Id.* ¶ 26. While the Amla Relaxer was

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 23, and are presumed to be true.
[2] Defendants argue that "lye" can mean only sodium hydroxide. *See* ECF No. 30-1 at 4. The Court takes judicial notice that Merriam-Webster defines "lye" as being "a strong alkaline solution (as of sodium hydroxide or potassium hydroxide)" or "a solid caustic (such as sodium hydroxide)." "Definition of Lye," Merriam-Webster, https://www.merriam-webster.com/dictionary/lye (last visited Nov. 14, 2017).

2

marketed as a "NO-LYE" relaxer, Plaintiff alleges that (1) the relaxing cream contained "lithium hydroxide," a dangerous and harsh chemical that causes severe irritation, burns, blisters, and hair destruction," *id.* ¶ 25; and, (2) online retailers listed "sodium hydroxide" as one of the relaxing cream's ingredients, *id.* ¶ 27.[3] Plaintiff further alleges that despite the "No-Mistake Application" promised by the Manufacturer Defendants, numerous consumers have complained of suffering scalp and skin burns, skin irritation, hair loss/damage, rashes, and blisters after using the Amla Relaxer. ECF No. 23 ¶ 33.

On August 2, 2013, Plaintiff, who "was seeking a safe no-lye hair relaxer," purchased the Amla Relaxer from a Family Dollar Store in Mount Rainier, Maryland. *Id.* ¶ 37. Plaintiff, who "had experience using other hair relaxers in the past," purchased the Amla Relaxer thinking that "it was safe, was a no-lye relaxer, and that it would not cause severe skin burns and hair destruction." *Id.* ¶¶ 37–38. On August 4, 2013, Plaintiff's daughter assisted Plaintiff in applying the Amla Relaxer to her hair. *Id.* ¶ 39. Plaintiff's daughter first tested the Amla Relaxer on part of Plaintiff's hair, and achieved an effective and safe result. *Id.* She then applied the "Scalp Protector Pre-Treatment" to Plaintiff's hair, followed by the "No-Mix Relaxer Crème." *Id.* After applying the Relaxer Crème, Plaintiff experienced a severe burning sensation on her head and scalp. *Id.* Plaintiff's daughter rushed her to their sink and rinsed the Relaxer Crème from her hair with the Neutralizing Shampoo and water; this did not ease the "burning pain." *Id.* As a result of using the Amla Relaxer, Plaintiff alleges that she sustained "serious and permanent injuries" including "chemical burns to her face and scalp and significant hair loss/damage." *Id.*

Plaintiff initiated this suit against Defendants in the Circuit Court for Prince George's County, Maryland, on August 2, 2016. ECF No. 1. On January 31, 2017, Defendants removed

---

[3] Notably, on the copy of the packaging provided by Defendants, "Sodium Hydroxide" is listed as the last ingredient in the product's shampoo. *See* ECF No. 30-2 at 4. (Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.)

the suit to this Court, alleging that this Court has original diversity jurisdiction under 28 U.S.C. § 1332. *Id.* On March 17, 2017, Plaintiff filed an Amended Complaint against Defendants. ECF No. 23. In her Amended Complaint, Plaintiff alleged a number of causes of actions against Defendants, which the Court divides into three categories: (1) breach of warranty (implied and express) claims (Counts I, II, VIII); (2) products liability (strict liability and negligence) claims (Counts III, IV, IX, X); and, (3) fraud-based claims (fraud and unfair/deceptive trade practices under the Maryland Consumer Protection Act) (Counts V, VI).[4] On April 14, 2017, the Manufacturer Defendants filed a Motion to Dismiss the Amended Complaint, ECF No. 30, which was joined by the Retail Defendants, ECF No. 35.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

Furthermore, where a plaintiff alleges that the defendant committed fraud, this claim must satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a plaintiff asserting a claim of fraud must allege "with particularity the

---

[4] Count VII is a claim for punitive damages, which is discussed below, *infra.* n. 5, following the discussion of the fraud-based claims.

circumstances constituting fraud." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Rule 9(b) requires a plaintiff to plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding*, 714 F.3d at 781.

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. DISCUSSION

In their Motion to Dismiss, Defendants move to dismiss each of Plaintiff's causes of action as a matter of law, for reasons that the Court addresses in turn below.

### A. Breach of Warranty Claims (Counts I, II, VIII)

In her Amended Complaint, Plaintiff alleges that the Manufacturer Defendants breached express warranties, ECF No. 23 at 12 (Count I), and implied warranties, *id.* at 14 (Count II), and that the Retail Defendants breached implied warranties, *id.* at 22 (Count VIII). Regarding the

5

implied warranties, Plaintiff claims that all Defendants sold a product that was not "of merchantable quality and reasonably fit and safe for its intended and ordinary use." *Id.* ¶¶ 50, 94. Regarding the express warranties, Plaintiff claims that the Manufacturer Defendants made a number of express warranties (e.g., that the product "protects scalp & skin") that convinced Plaintiff to purchase the product but were ultimately untrue. *Id.* ¶ 42.

In their Motion to Dismiss, Defendants give several reasons why these breach of warranty claims should be dismissed. First, Defendants argue that Plaintiff has not sufficiently pleaded that she provided Defendants with statutorily required notice of her breach of warranty claims pursuant to Md. Code. Com. Law § 2-607. ECF No. 30-1 at 7. Second, Defendants argue that each of the representations cited by Plaintiff either consists of "puffery," "cannot be interpreted as a verifiable statement of objective fact," or "is objectively verified." *Id.* at 9. Finally, Defendants argue that Plaintiff's implied warranty claims are insufficiently pleaded, and do not allege "that a safer reasonable alternative design . . . would have prevented the risk of harm." *Id.* at 11.

Regarding Defendants' first point, Plaintiff alleges that she has complied with the provisions of § 2-607 and provided pre-suit notice to the Manufacturer Defendants. ECF No. 38 at 9 n.11.[5] She also argues that she needs only to "allege that she generally complied" with § 2-607 under Fed. R. Civ. P. 9(c). Regarding Defendants' second point, Plaintiff argues that certain representations on the Amla Relaxer packaging ("no-lye," "protects scalp and skin," "Ensures a No-Mistake Application") were statements of fact and were untrue. ECF No. 38 at 10–13. Finally, regarding Defendants' third point, Plaintiff argues that she has pleaded that the Amla

---

[5] In her Opposition to the Motion, Plaintiff describes that on August 5, 2013, the day after she used the Amla Relaxer, she called the Retail Defendants' toll-free number that was listed on the Amla Relaxer's packaging to report her claim, and subsequently sent letters to the Retail Defendants through her attorney. ECF No. 38 at 9 n.11. The Court will grant leave to Plaintiff to amend the Complaint to include this allegation.

6

Relaxer was not merchantable, as it contained an "overly dangerous chemical composition that caused severe skin burning and hair loss/damage." *Id.* at 14. Plaintiff points out that "Maryland . . . does not require Plaintiff to establish a safer reasonable alternative design to correct Defendants' hazardous design." *Id.* at 15 (citing *Halliday v. Strum, Ruger & Co.*, 792 A. 2d 1145, 1155 (Md. 2002)).

### i. Notice Requirement of § 2-607

Md. Code, Com. Law, § 2-607(3)(a) provides that a buyer "must within a reasonable time after [s]he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." In this context, Maryland courts have interpreted the word "seller" to exclude an indirect seller, like a manufacturer, and to mean only "the immediate seller" of the product. *Firestone Tire & Rubber Co. v. Cannon*, 452 A.2d 192, 198 (Md. App. 1982), *aff'd*, 456 A.2d 930 (Md. 1983). The purpose of this rule is to "inform the seller of a defect in the transaction, enabling him to correct the defect if possible and to minimize any damages," *Frericks v. Gen. Motors Corp.*, 363 A.2d 460, 465 (Md. 1976), as well as to "open[] the way for normal settlement through negotiation." Md. Code Ann., Com. Law § 2-607, cmt. 4. *See also Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 552 (D. Md. 2011) ("One of the primary reasons for the notification requirement is that it provides the seller and the manufacturer an opportunity to correct their original performance and avoid costly litigation."). "It is clear that in an action by a buyer against his seller for a breach of warranty, the buyer must notify the seller of the alleged breach." *Frericks*, 363 A.2d at 463. It is also apparent that where no notice was given to an immediate seller or an indirect seller/manufacturer, § 2-607(3)(a) also bars a plaintiff's claims for breach of warranty against the indirect seller/manufacturer. *See, e.g., Firestone Tire & Rubber Co.*, 452 A.2d at 198.

7

What is not clear under Maryland law is how § 2-607(3)(a) should be applied where, as in this case, the plaintiff has provided pre-suit notice to the manufacturer, the Manufacturer Defendants, has not provided pre-suit notice to the immediate seller, the Retail Defendants, yet brings claims for breach of warranty against all Defendants. Here, Plaintiff did not "notify the [immediate] seller of breach" and so is seemingly "barred from any remedy." As the Retail Defendants were not on notice, Plaintiff is clearly "barred from any remedy" against them. However, does "any remedy" extend to remedies sought against the Manufacturer Defendants, who *were* on notice? Neither the parties nor the Court have identified any case in which a Maryland court has opined on this specific question. Defendants rely heavily on this Court's decision in *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (Williams, J.). There, plaintiffs who had purchased allegedly defective vehicles sued their immediate sellers as well as the manufacturers of the vehicles. *Id.* at 533–34. Although plaintiffs had pleaded generally that they had "provided sufficient and timely notice to [the manufacturer] regarding the problems they experienced," *id.* at 541, the court found that they had not informed the seller or manufacturer of "the particular component that was impaired and the nature of the nonconformity," *id.* at 542. As such, the court concluded that "neither the [seller] nor [the manufacturer] would have known that the Plaintiff was claiming a breach of implied warranty." *Id.* In summarizing Maryland law, the court reasoned that "if a plaintiff wishes to claim a breach of implied warranty against a manufacturer, the plaintiff must notify their immediate seller of the breach." *Id.* at 542.

In their filings and at the motions hearing, Defendants urged the Court to rely on *Doll*'s reasoning and find that Plaintiff's failure to provide notice to the Retail Defendants bars her breach of warranty claims against all Defendants. *See, e.g.*, ECF No. 45 at 10. At the same

8

hearing, however, counsel for Defendants conceded that it "doesn't seem to make sense" that a plaintiff would be barred from bringing a breach of warranty claim against a manufacturer to whom plaintiff had provided notice. The Court agrees. The Court reads *Doll* as being limited to the facts before that Court; where the manufacturer had not been provided with sufficient notice regarding the breach of warranty claims. In determining how to apply § 2-607 to this unique factual situation, the Court looks to the rationale underlying § 2-607 as previously laid out by Maryland's courts and legislature. Where, as in this case, the manufacturer has been provided with sufficient pre-suit notice, the underlying policy of § 2-607 has been satisfied; the manufacturer was "inform[ed] . . . of a defect in the transaction, enabling him to correct the defect if possible and to minimize any damages," *Frericks*, 363 A.2d at 465, and was free to seek "normal settlement through negotiation." Md. Code Ann., Com. Law § 2-607, cmt. 4. The same notice was not provided to the Retail Defendants, however. As such, the Court finds that Plaintiff's breach of warranty claims against the Retail Defendants are barred for failure to give notice under § 2-607, but that her breach of warranty claims against the Manufacturer Defendants are not barred.

### ii. Express and Implied Breaches of Warranty

In their Motion to Dismiss, Defendants contend that Plaintiff has not pleaded a plausible claim for breach of an express or implied warranty. *See* ECF No. 30-1 at 8, 10. "To state a claim for breach of express warranty under Maryland law, a plaintiff must allege 1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 223 (4th Cir. 2009) (internal quotation omitted). To state a claim for breach of the implied warranty of merchantability, a

plaintiff must allege that the goods purchased were not "fit for the ordinary purpose for which such goods are used." *Robinson*, 551 F.3d at 225 (quoting Md. Code, Com. Law, § 2-314(2)).

Regarding Plaintiff's breach of warranty claims against the Manufacturer Defendants, Plaintiff has sufficiently pleaded allegations that, assumed to be true, constitute plausible causes of action of breach of express and implied warranties. Plaintiff has alleged that the Amla Relaxer promised a "NO-LYE" product, which would "Protect[] Scalp & Skin" through an ensured "No-Mistake Application," ECF No. 23 ¶ 19, but that, in reality, the Amla Relaxer contained a lye-like chemical that caused severe hair and scalp injuries. *Id.* ¶ 39. Taken as true, these facts constitute a claim for breach of express warranty. Plaintiff also has alleged that she used the product in a foreseeable manner, following the instructions, and that the product still caused serious injury. Thus, Plaintiff has alleged that the Amla Relaxer was not "fit for the ordinary purpose for which such goods are used," and has pleaded a claim for breach of implied warranty. Plaintiff's breach of warranty claims against the Manufacturer Defendants will not be dismissed.

### B. Product Liability Claims (Counts III, IV, IX, X)

Product liability claims can be brought under a strict liability theory, and/or a negligence theory. "The negligence theory of product liability focuses on the conduct of the defendant, while the strict liability theory of products liability focuses 'primarily on the *product* (and whether or not it can be deemed defective).'" *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 780 (D. Md. 2012) (quoting Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 255, 265 (4th ed. 2008) (emphasis in original)). Under both theories of recovery, "a plaintiff must show 'three product litigation basics—defect, attribution of defect to seller [or manufacturer], and a causal relationship between the defect and the injury.'" *Laing v.*

*Volkswagen of Am., Inc.*, 949 A.2d 26, 39 (Md. Ct. Spec. App. 2008) (citing *Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 369–70 (Md. 2001)).

Here, Plaintiff asserts a number of product liability claims against Defendants under both theories. First, she alleges that the Defendants are strictly liable to her for the injuries she allegedly suffered. *See* ECF No. 23 at 15 (Count III), *id.* at 23 (Count IX). Second, she alleges that the Defendants are liable under a theory of negligence. *Id.* at 17 (Count IV); *id.* at 25 (Count X). These claims are addressed in turn.

### i. Strict Liability

Maryland courts rely on one of two different tests in assessing a strict liability design defect case: the "risk-utility" test and the "consumer expectation" test. *See Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1150 (Md. 2002). Courts use the risk-utility test where a plaintiff alleges that a product "malfunctions in some way." *Ruark v. BMW of N. Am., LLC*, No. ELH-09-2738, 2014 WL 1668917, at *6 (D. Md. Apr. 24, 2014). Otherwise, courts rely on the consumer expectation test. *Halliday*, 792 A. 2d at 1150; *see also Green v. Wing Enterprises, Inc.*, No. RDB-14-1913, 2016 WL 739060, at *2 (D. Md. Feb. 25, 2016) ("the consumer expectation test applies to strict liability claims in which the plaintiff alleges injury due to a design defect"). Under this test, a seller of a product is liable to the consumer where the product is in a "condition not contemplated by the ultimate consumer," which will be dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.*

Here, Plaintiff has sufficiently pleaded that Defendants are strictly liable under the consumer expectation test. Plaintiff has alleged that while the product was packaged as a "NO-LYE" product, which would "Protect[] [the customer's] Scalp & Skin," and would "Ensure[] a

11

No-Mistake Application," ECF No. 23 ¶ 19, in reality, the Amla Relaxer contained a dangerous lye-like chemical that was capable of severely injuring even a consumer who followed all directions included with the Amla Relaxer, *id.* ¶ 39. Taken as true, these facts plausibly allege that the Amla Relaxer was in a "condition not contemplated by the ultimate consumer" "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it." Therefore, Plaintiff's strict liability claims (Counts III and IX) survive Defendants' Motion to Dismiss.

### ii. Negligence

"The basic elements of negligence apply in negligence-based products liability cases." *Parker*, 891 F. Supp. 2d 773 at 780. *See also Banks v. Iron Hustler Corp.*, 475 A.2d 1243, 1250 (Md. Ct. Spec. App. 1984). As a matter of law, "[a] manufacturer generally . . . has a duty to exercise reasonable care in the design and manufacture of his product." *Fischbach & Moore Int'l Corp. v. Crane Barge R–14*, 632 F.2d 1123, 1127 (4th Cir.1980) (citing *Moran v. Faberge, Inc.*, 273 Md. 538 (1975)). Plaintiff's claims of negligence raise two distinct allegations: (1) that Defendants negligently designed a defective product; and, (2) that Defendants negligently failed to warn consumers regarding the dangers of their products.

First, Plaintiff has sufficiently pleaded that the Amla Relaxer was negligently designed. A manufacturer has a duty to design and manufacture the product so that it is safe for all reasonably foreseeable uses. *Am. Laundry Mach. Indus. v. Horan*, 412 A.2d 407, 413 (Md. Ct. Spec. App. 1980). Here, Plaintiff pleaded that she and her daughter followed the instructions included with the Amla Relaxer, and that she still suffered injury. Taking this allegation as true, Plaintiff was using the Amla Relaxer in a reasonably foreseeable way, but was still injured. As such, she has sufficiently pleaded that the Amla Relaxer was negligently designed.

Second, Plaintiff has sufficiently pleaded that Defendants negligently failed to warn consumers of the dangers inherent in the Amla Relaxer. *See Parker*, 891 F. Supp. 2d 773, 796 (D. Md. 2012) ("'the failure to warn is not an independent theory of liability' under Maryland law, but a subset of tort liability" (quoting *Morgan v. Graco Children's Prods., Inc.*, 184 F. Supp. 2d 464, 466 (D. Md. 2002))). A manufacturer "has no duty to warn of an open and obvious danger in its product," or a danger of which a person is already aware. *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th Cir.1998) (citing *Mazda Motor of Am., Inc. v. Rogowski*, 659 A.2d 391, 395 (Md. Ct. Spec. App. 1995)). Whether a danger is open and obvious is a question that "cannot be analyzed in a vacuum." *Emory*, 148 F.3d at 350. Instead, the Court should consider "the complexity of the [product], the knowledge, age, background, experience, intelligence, and training of the person injured, the extent to which his [or her] required contact with the device is routine and repetitive, [and] whether he [or she] is subject to distractions." *Banks*, 475 A.2d at 1251.

Here, Plaintiff has alleged that Defendants did not warn consumers that the Amla Relaxer could cause serious injury even if used as instructed. ECF No. 23 at 17. Plaintiff acknowledges that the Amla Relaxer's packaging included warnings that the product could "cause blindness" and that a consumer should avoid contact with skin, but alleges that these appeared "in very small fine print." *Id.* ¶ 34. Plaintiff alleges that "[t]he warnings . . . only warn consumers of hazards when the [Amla Relaxer] is being misused" and "fail to warn against hazards . . . that can occur during reasonable and/or foreseeable use." *Id.* ¶ 35. Taking these allegations as true, Plaintiff has stated a plausible claim for negligent failure to warn.

### C. Fraud-Based Claims (Counts V, VI)

Plaintiff alleges that the Manufacturing Defendants are liable for fraud, as well as for violations of the Maryland Consumer Protection Act ("MCPA"): specifically, "Unfair or Deceptive Trade Practices." ECF No. 23 at 19–20. Under Maryland law, to state a claim for fraud based on an affirmative misrepresentation, a plaintiff must allege that:

> (1) a representation made by a party was false; (2) its falsity was either known to the party or made with such reckless indifference to the truth to impute knowledge; (3) the misrepresentation was made for the purpose of defrauding some other person; (4) that person reasonably acted in reliance upon the misrepresentation with full belief in its truth, and he would not have done the thing from which damage resulted had it not been made; and (5) the person so acting suffered damage directly resulting from the misrepresentation.

*Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 545–46 (4th Cir. 1987) (citation omitted). *See also Todd v. Xoom Energy Maryland, LLC*, No. GJH-15-154, 2016 WL 727108, at *9 (D. Md. Feb. 22, 2016). Similarly, the Maryland Consumer Protection Act ("MCPA") prohibits covered businesses from making a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." *See* Md. Code, Com. Law § 13-301(1). "A consumer bringing a private action under [the MCPA] must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012); *Lloyd*, 916 A.2d at 277).

Plaintiff has sufficiently pleaded the overlapping elements of fraud and a violation of the MCPA. Plaintiff has alleged that: (1) the Manufacturing Defendants marketed the Amla Relaxer as "NO-LYE," even though parts of the product contained lye or a lye-like substance, ECF No. 23 ¶¶ 27–28 ("One of the retailer websites . . . lists 'sodium hydroxide' among the [Amla

14

Relaxer's] ingredients."); (2) that the Manufacturing Defendants knew its representations were false, *id.* ¶ 32; (3) that the Manufacturing Defendants made the representations with the expectation that consumers would rely on those representations, *id.* ¶ 20 ("This representation was aimed at a consumer group that was seeking alternatives to traditional lye-based relaxers . . . ."); (4) that Plaintiff relied on the representations when deciding to purchase the Amla Relaxer, *id.* ¶ 26; and, (5) that Plaintiff suffered injuries resulting from the misrepresentations, *id.* ¶ 39. Taking all these facts as true, Plaintiff has sufficiently pleaded causes of action for fraud and violation of the MCPA, and Counts V and VI will not be dismissed.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 30, is granted in part and denied in part. Specifically, Defendants' Motion to Dismiss is granted regarding Plaintiff's claim of breach of implied warranty against the Retail Defendants, Count VIII, which will be dismissed. In all other regards, Defendants' Motion to Dismiss is denied. A separate Order shall issue.

Date: November 29, 2017

GEORGE J. HAZEL
United States District Judge

---

[6] Defendants had also moved to dismiss Plaintiff's claim for punitive damages. ECF No. 30-1 at 20. In Maryland, punitive damages may be awarded where "the plaintiff has established the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, *i.e.*, 'actual malice.'" *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1125 (Md. 1995). *See also Myles v. Rent-A-Ctr., Inc.*, No. JKB-15-300, 2015 WL 4129576, at *3 (D. Md. July 7, 2015). Here, having already found that Plaintiff sufficiently alleges the elements of fraud, Defendants' alleged "actual knowledge of falsity, coupled with [its alleged] intent to deceive [Plaintiff] by means of the false statement, constitutes the actual malice required to support an award of punitive damages." *Id.* at 1126.